UNITED STATES of America,
Plaintiff–Appellee,

v.

Jonathan L. BERRY, Defendant–
Appellant.

No. 95–5955.

United States Court of Appeals,
Sixth Circuit.

Argued June 7, 1996.

Decided July 19, 1996.

David A. Mayre, Asst. U.S. Atty. (argued and briefed), Lexington, KY, for plaintiff-appellee.

Derek G. Gordon (argued and briefed), Anggelis, Gordon & Simpson, Lexington, KY, for defendant-appellant.

Jonathan L. Berry, Lexington, KY, pro se.

Before: KENNEDY and NORRIS, Circuit Judges; MATIA,* District Judge.

* The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation.

KENNEDY, Circuit Judge.

Defendant Jonathan L. Berry appeals his conviction and sentence for knowingly and intentionally possessing, with intent to distribute, cocaine in violation of 21 U.S.C. § 841(a)(1), arguing that his conviction violated the Speedy Trial Act, that the District Court abused its discretion in calculating his base offense level for purposes of sentencing, and that the District Court improperly denied his motion to suppress certain evidence. For the following reasons, we AFFIRM.

## I. Facts

On November 2, 1994, defendant was arrested after officers executed a search warrant at the apartment of Will Hocker. When the search warrant was executed, defendant was in a rear bedroom of the apartment in which officers found a razor blade on top of a plate with suspected cocaine residue, and a small set of scales.

Following defendant's arrest, officers secured a warrant to search his car. The affidavit in support of the search warrant stated that while officers were executing the search warrant at Hocker's apartment a "drug sniffing or drug detecting dog" "reacted or alerted" to defendant's automobile, indicating the probable presence of controlled substances within the vehicle. Further, the affidavit stated that the dog and its handler "have both been trained, qualified in the processes and procedures required to properly conduct such [narcotics] investigations." Upon searching defendant's car, officers found $6300 in cash and a prescription pill bottle that contained cocaine residue.

On November 17, 1994, defendant, along with two other individuals, was indicted for knowing and intentional possession, with intent to distribute, approximately ten grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and conspiracy to possess and distribute same in violation of 18 U.S.C. § 2. The indictment further alleged that defendant intended to use the $6300 seized from his car and the car itself to commit or facilitate controlled substance violations, and that that property was derived from the violation

of 21 U.S.C. § 841(a)(1). Defendant was arraigned and pleaded not guilty.

On January 18, 1995, the government moved to dismiss the indictment without prejudice. Rejecting defendant's objection that dismissal and re-indictment would violate the provision of the Speedy Trial Act that requires an indictment to be filed within thirty days of an individual's arrest, the District Court granted the government's motion and dismissed the indictment without prejudice.

The following day, January 19, the government re-indicted the defendant on the same charges. Defendant did not object to the filing of this second indictment. The only differences between the first and the second indictment were that the second indictment omitted the drug quantity and the additional individuals. Defendant was arraigned and pled not guilty to the charges in the second indictment on January 27, 1995. Defendant's trial began on March 14, 1995, and, the following day, defendant was convicted on all counts.

At defendant's sentencing hearing, Detective Kathryn Felice, an undercover detective with the Kentucky State Police, testified that she made two purchases of cocaine base from an individual who was working with or for the defendant; Detective Felice identified the defendant as a participant to both transactions. On the first occasion she purchased 772 milligrams of cocaine base for $120 and on the second occasion she purchased 549 milligrams of cocaine base for $100.[1] In addition, at the sentencing hearing, the defendant admitted, though he was not under oath, to selling fourteen grams of cocaine.

For purposes of determining defendant's base offense level under the United States Sentencing Guidelines, the District Court refused to credit defendant's statement that he sold only fourteen grams of cocaine and, instead, undertook a calculation of the drug quantity for which defendant would be held accountable. The District Court divided $6300, the amount of cash recovered from defendant's car, by $168, the average price per gram of cocaine base. Using this formu-

---

1. The average price per gram for these transac-    tions was $168.

la, the District Court found that defendant was responsible for at least thirty-five grams of cocaine, which translated to an offense level of 30, with a sentencing range between ninety-seven and one hundred twenty-one months. Accordingly, the District Court sentenced defendant to ninety-seven months imprisonment.

## II. Discussion

### A. The Speedy Trial Act

Defendant maintains that because the indictment filed on January 19 was filed more than thirty days after his November 2 arrest, the Speedy Trial Act, 18 U.S.C. § 3161 et seq., requires the reversal of his convictions. The Speedy Trial Act provides that "[a]ny ... indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested ... in connection with such charges." 18 U.S.C. § 3161(b). Section 3162(a)(1) sets forth the sanction for violations of § 3161(b):

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, *no* indictment ... is filed within the time limit required by section 3161(b) ... such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.

18 U.S.C. § 3162(a)(1) (emphasis added).

This is not a case in which no indictment was filed within the requisite thirty days; on the contrary, the November 17 indictment was filed within thirty days of defendant's November 2 arrest. Defendant's argument, however, suggests that, regardless of when the first indictment was filed against him, any subsequent indictment must also have been issued within thirty days of his arrest. We reject this theory.

■ The Speedy Trial Act is silent as to the proper judicial response where the government secures an indictment within thirty days of defendant's arrest and later procures a second indictment, which adds no new charges and no new facts, more than thirty days following defendant's arrest. Nonetheless, the purpose of the thirty-day rule convinces us that in this context the original

indictment tolls the running of the thirty-day provision. The purpose of the thirty-day rule is to ensure that the defendant is not held under an arrest warrant for an excessive period without receiving formal notice of the charge against which he must prepare to defend himself. *See United States v. McCown*, 711 F.2d 1441, 1447 (9th Cir.1983). When a defendant is indicted within the thirty-day period and then re-indicted on identical charges based on identical facts after the expiration of the thirty-day period, the purpose of the thirty-day rule is satisfied; because the original indictment put the defendant on notice as to what charges he would confront at trial, he is not prejudiced by the original indictment's tolling of the thirty-day period.

■ In this case, then, since the second indictment did not change the charges against the defendant, the original indictment tolled the thirty-day period. When the original indictment was dismissed, the thirty-day period again continued to run; it did not begin anew. The second indictment was then filed before the thirty-day period expired. Therefore, the filing of the second indictment, even though filed after thirty days following defendant's arrest, did not violate his rights under the Speedy Trial Act. *See United States v. Castellano*, 848 F.2d 63, 65 (5th Cir.1988) (holding that the filing of a superseding indictment predicated on the same acts as an earlier invalid indictment did not violate the Speedy Trial Act, even though the superseding indictment was filed more than thirty days after defendant's arrest); *United States v. Mitchell*, 723 F.2d 1040, 1044–45 (1st Cir.1983) (reasoning that since the superseding indictment neither changed the original charges nor governed the starting time of the seventy-day indictment-to-trial clock, the filing of the superseding indictment more than thirty days after defendant's arrest did not violate the Speedy Trial Act); *McCown*, 711 F.2d at 1445, 1448 (rejecting defendant's argument that the filing of an indictment, more than thirty days after his arrest, that charged the same conduct charged in a prior indictment, violated the Speedy Trial Act); *United States v. Rabb*, 680 F.2d 294, 297 (3d Cir.) (holding that an

indictment returned by a grand jury whose term had expired tolled the thirty-day period when followed by a materially identical, valid indictment), *cert. denied,* 459 U.S. 873, 103 S.Ct. 162, 74 L.Ed.2d 135 (1982).

In support of his position, however, defendant relies on *United States v. Ford,* 532 F.Supp. 352 (D.D.C.1981). In that case, defendant was arrested on June 21, 1981, and charged in a complaint filed on June 22, 1981. *Id.* at 352. On July 27, 1981, the complaint was dismissed and defendant was re-indicted on September 11, 1981. *Id.* The court held that because the indictment was not returned within thirty days of the defendant's arrest, his rights under the Speedy Trial Act had been violated. *Id.* at 353.

Defendant's reliance on *Ford,* however, is not persuasive. In *Ford,* the first indictment tolled the limitations period. That period began to run again when the complaint was dismissed on July 27, and expired on or around August 27. Defendant's indictment on September 11, after the expiration of the thirty-day period, therefore, was in violation of the Speedy Trial Act, as the district court in that case concluded. Although the district court in *Ford* did not undertake this analysis, our understanding of the Speedy Trial Act yields the same result. Therefore, our disposition of defendant's Speedy Trial Act claim is not inconsistent with *Ford.*

### B. Calculation of Defendant's Base Offense Level

Next, defendant challenges the District Court's calculation of a base offense level of 30, claiming that it should have been set at 26. United States Sentencing Guideline § 2D1.1 provides for the enhancement of the defendant's base offense level for quantities of drugs not specified in the counts of conviction but for which the defendant is nonetheless accountable. Commentary note 12 provides in part:

> Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled sub-

stance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

USSG § 2D1.1 comment. (n.12).

■ The District Court's calculation of the quantity of controlled substances for which a defendant is to be held accountable is a finding of fact that we review for clear error. *United States v. Brannon,* 7 F.3d 516, 520 (6th Cir.1993). A court may hold a defendant responsible for an amount of drugs only if it finds that it is more likely than not that the defendant actually was responsible for at least that amount. *United States v. Ward,* 68 F.3d 146, 149 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1028, 134 L.Ed.2d 106 (1996). When no controlled substances are seized, the quantity need not be ascertained with exact certainty. *Brannon,* 7 F.3d at 520. However, that approximation must be supported by competent evidence in the record. *Id.* The validity of the sentence in a case in which the district court approximates an amount of drugs, therefore, depends on the basis of the court's calculation. *Ward,* 68 F.3d at 149.

■ Defendant's first assignment of error is that the District Court did not credit his testimony that he purchased and sold only fourteen grams of cocaine. We defer to the District Court's assessment of defendant's credibility unless it is clearly erroneous. *See Brannon,* 7 F.3d at 520. The District Court did not clearly err when it decided not to credit the statements of the defendant regarding the quantity of drugs he sold. Not only was defendant not under oath when he gave his statement, but also his incentive to minimize his involvement in drug-related activities was quite high. Moreover, the defendant's statement was inconsistent with the District Court's finding that the $6300 in cash found in defendant's car was attributable to narcotics transactions. As such, the District Court's refusal to credit defendant's testimony was not in error.

In addition, defendant seems to object to the method by which the District Court arrived at the price of cocaine. He states that he did not actually sell the drugs to Detective

Felice, thereby suggesting that the District Court improperly relied upon information of those sales to arrive at a unit price. The testimony of Detective Felice, which the District Court credited, however, established that defendant was a participant to these drug transactions; he approved the sales and supplied the drugs. As these were transactions in controlled substances by the defendant, it was not error for the District Court to rely on these sales to arrive at a price obtained for the drugs and to use that number to calculate the quantity for which defendant would be held accountable. *See* USSG § 2D1.1 comment. (n.12).

■ Finally, defendant suggests that because no actual controlled substances were found in his possession, the District Court's finding that he had purchased and sold at least thirty-five grams of cocaine base was inappropriate. Defendant fails to recognize that the very purpose of USSG § 2D1.1 is to hold the defendant responsible for drugs even when there is no drug seizure. In that there was $6300 in cash in his car and that defendant had not been employed in almost a year and a half, it was not clearly erroneous for the District Court to conclude that this money represented proceeds of drug-related activities and to arrive at a drug quantity based on that figure and the price at which defendant had been selling the drugs. Accordingly, the District Court's calculation of a base offense level of 30 was not clearly erroneous.

## C. Motion to Suppress

■ Finally, defendant argues that the District Court improperly denied his motion to suppress the evidence obtained from the search of his car, claiming that there was no probable cause to justify the issuance of the search warrant. A valid search warrant may be issued only upon a finding of probable cause, or a "fair probability" that contraband or other evidence of a crime will be found in the place to be searched. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Michigan v. Tyler,* 436 U.S. 499, 506, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486 (1978). We review the issuing magistrate judge's finding of probable cause to ensure that a substantial basis supported that finding. *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332.

■ A positive reaction by a properly trained narcotics dog can establish probable cause for the presence of controlled substances. *United States v. Diaz,* 25 F.3d 392, 394 (6th Cir.1994). However, for such a reaction to support a determination of probable cause, the training and reliability of the dog must be established. *Id.*

■ We find that the information contained in the affidavit in this case was sufficient to establish the training and reliability of the drug-detecting dog. The affidavit's references to the dog as a "drug sniffing or drug detecting dog" reasonably implied that the dog was a "trained narcotics dog." Further, the affidavit stated that the dog was trained and qualified to conduct narcotics investigations.

■ Nonetheless, defendant contends that the affidavit in support of the search warrant was inadequate because it failed to establish the dog's reliability and credibility. Contrary to defendant's suggestion, to establish probable cause, the affidavit need not describe the particulars of the dog's training. Instead, the affidavit's accounting of the dog sniff indicating the presence of controlled substances and its reference to the dog's training in narcotics investigations was sufficient to establish the dog's training and reliability. *See United States v. Daniel,* 982 F.2d 146, 151 n. 7 (5th Cir.1993) (rejecting defendant's argument that an affidavit must show how reliable a drug-detecting dog has been in the past in order to establish probable cause); *United States v. Venema,* 563 F.2d 1003, 1007 (10th Cir.1977) (stating that an affidavit in support of a search warrant need not describe the drug-detecting dog's educational background and general qualifications with specificity to establish probable cause). Therefore, after examining the affidavit in support of the search warrant, we agree with the issuing judge's and the District Court's conclusions that the affidavit does provide a substantial basis to support a finding of probable cause. Accordingly, the District Court's denial of defendant's motion

to suppress the evidence seized during the search of defendant's car was not erroneous.

### III. Conclusion

For the reasons stated, we AFFIRM the decision of the District Court.