**UNITED STATES of America,**
**Plaintiff,**

v.

**Milton Bernard PATTY, Defendant.**

No. 99–CR–80674–DT.

United States District Court,
E.D. Michigan,
Southern Division.

March 27, 2000.

## *OPINION*

DUGGAN, District Judge.

Defendant Milton Bernard Patty has been charged with one count of attempted possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 846, based upon evidence discovered during the search and seizure of one United Parcel Service ("UPS") parcel and a subsequent controlled delivery of the seized parcel. This matter is currently before the Court on defendant's motion to suppress all evidence obtained as a result of both the search and seizure of the UPS parcel and its subsequent controlled delivery.

### *Background*

Defendant's charge is based upon evidence seized as the result of two separate searches, each conducted pursuant to a search warrant. The first search involved a UPS parcel addressed to T. Brown, 8145 Kentucky Street, Detroit, Michigan 48204. On July 13, 1999, DEA Parcel Interdiction Team Task Force Agents ("TFAs") Brett Michalski, David Praedel, and Jeff Gueli conducted a routine inspection of parcels at the UPS facility located at 19951 Hoover Road in Detroit, Michigan. During this inspection, Michalski identified the subject UPS parcel as a "suspicious" parcel because there was an excessive amount of red and white "next day air" tape on it, the box was "reused," the parcel was sent

from a "secondary store," [1] and the parcel originated from a "source state," i.e., California.

The agents then conducted a dog sniff to determine whether Gueli's canine, "Caliber," a dog trained to detect the presence of controlled substances, would detect the presence of a controlled substance in the parcel. At that point, Gueli exited the building and retrieved Caliber, who was waiting in Gueli's vehicle during the initial inspection of the parcels. Gueli and Caliber "cleared" the area where the subject parcel was to be placed, confirming that Caliber did not detect the presence of a controlled substance on any of the parcels already contained in the search area.[2] After Gueli and Caliber left the search area, Michalski placed the suspicious parcel on a bottom shelf between two other packages. Gueli and Caliber were outside the UPS facility when Michalski placed the parcel. At no time prior to the dog sniff was Gueli shown the parcel or told where the parcel had been placed.

Gueli and Caliber then conducted a second dog sniff of the area.[3] Caliber "alerted" on the suspect parcel, indicating that the parcel contained a controlled substance.[4] Michalski seized the parcel and took it to the Interdiction Team's office in Romulus, Michigan. Michalski informed TFA Eddie T. Smith that Caliber had alerted on the subject parcel. Based upon this information, Smith signed an affidavit for the purpose of obtaining a search warrant for the parcel. In pertinent part, the affidavit stated:

1. On July 13, 1999, a United Parcel Service package arrived at the UPS Facility located in Detroit, MI. The parcel

---

1. The parcel was addressed from: The Postmaster/B. Brown, 2245 Colorado # 104, Pasadena, CA 91107.

2. This area consisted of a parcel holding cage within the UPS facility, which was approximately 100 feet long, contained three sets of three-tiered shelving, and approximately 100 to 150 other parcels.

3. At the time of the dog sniff, Michalski was outside of the cage area being searched.

4. Caliber "alerted" by pulling the parcel off the shelf, scratching, and biting at it.

was from an [sic] known source location. The parcel is described as follows:

A) **Addressed To:** T. BROWN, 8145 Kentucky St., Detroit, MI 48204

B) **Return Address:** The Postmaster/B.BROWN, 2245 East Colorado #104, Pasadena, CA 91107, Telephone Number (626) 218–7102.

C) **United Parcel Service Tracking Number:** 1Z90807E0110033084.

D) **Method of packaging:** One (1) brown cardboard box approximately $16'' \times 12'' \times 4''$

2. On July 13, 1999, TFA's Brett Michalski and Dave Praedel were at the United Parcel Service Facility located at 19951 Hoover Rd., Detroit, MI 48205 and observed the aforementioned parcel. Agents became suspicious of the parcel based on a number of packaging characteristics.

3. On July 13, 1999, TFA Jeff Gueli and his 22 month old controlled substance trained K–9 "Caliber," were requested to conduct a search for a narcotics odor on a suspected parcel at the above mentioned location. TFA Gueli had K–9 "Caliber" check said area to see that the area was clear of narcotics odor. TFA Gueli advised TFA Michalski that K–9 "Caliber" did not indicate the presence of a narcotics odor in the said area. TFA Michalski then placed the suspected parcel into the said area. TFA Gueli and K–9 "Caliber" rechecked the same area. TFA Gueli advised TFA Michalski that K–9 "Caliber" did alert only on the suspect parcel, indicating the presence of a controlled substance or other drug related items. K–9 "Caliber" is trained as an aggressive response K–9, and will alert on a suspect parcel containing the scent of a controlled substance by biting, scratching and/or barking at the item.

4. K–9 "Caliber" was trained and certified in detecting controlled substances at the K–9 Academy located in Romulus, MI. "Caliber" is a German Shepherd trained to detect the odor of controlled substances including powder cocaine, crack cocaine, heroin, marijuana and items which contain the scent of those controlled substances. "Caliber" was certified by North American Police Work Dog Association (N.A.P.W.D.A.) in October of 1998 and certified by the United States Police Canine Association (U.S.P.C.P.) in May of 1999. "Caliber" currently works on a daily basis with K–9 handler TFA Jeff Gueli for the Drug Enforcement Administration's Parcel Interdiction Team. In over two hundred hours of training, "Caliber" has performed over one hundred searches including searches of suitcases, parcels, private residences, and motor vehicles. Search warrants previously issued based on "Caliber" has [sic] detected a total of 2,344.0 grams (5.1 pounds) of cocaine, and 44,135.2 grams (97.3 pounds) marijuana.

(Gov't Answer, Ex. A).

The affidavit was submitted to 34th District Court Judge Henry Zaborowski, who issued a search warrant. Michalski then opened the parcel and discovered approximately one kilogram of cocaine hidden inside of the "power control center" contained in the parcel. A majority of the cocaine was removed, an electronic monitoring device and theft detection powder were placed inside the parcel, and the parcel was repackaged for delivery to the "intended" addressee.

Based upon the information then possessed by the agents, the agents sought a second warrant, an "anticipatory search warrant" for 8145 and 8149 Kentucky St., which was issued by Wayne County Circuit Court Judge Robert Evans.[5] (Gov't Answer, Ex. B). A "controlled delivery" of the parcel to 8145 Kentucky was made

---

**5.** Both 8145 Kentucky and 8149 Kentucky are contained within one two-story, two-family duplex. Defendant was paying the utilities at 8145 Kentucky and was listed with the Secretary of State as having an address of 8149 Kentucky. Defendant was also observed entering and exiting 8145 Kentucky on July 13, 1999. (Gov't Answer at 2 & Ex. B).

on July 13, 1999. Dana Shurn signed for and accepted the parcel as T. Brown. Less than three hours later, the electronic monitoring device sounded, indicating that the parcel had been opened. At that time, the anticipatory search warrant was executed. Defendant was found in the basement of 8145 Kentucky, near the opened parcel, with theft detection powder on his hands.

Defendant seeks to suppress all evidence obtained as a result of both search warrants contending that the first search warrant was improperly obtained and therefore, any evidence, as well as the second anticipatory search warrant, were illegally obtained as fruits of an illegal search and seizure. Defendant asserts that the first warrant was "constitutionally invalid on its face" because it failed to "provide a factual showing of reliability." (Def.'s Post–Hr'g Mem. at 1). Specifically, defendant alleges that the affidavit failed to:

> [S]et forth specific facts concerning the exact training that Caliber has received; or the standards or criteria used to select Caliber for drug detection work. Furthermore, there was no specific articulation of the standards that the dog had to meet in order to successfully complete the training program, and the track record of the dog was summarized to a point that it was misleading and incomplete.

(*Id.*).

An evidentiary hearing regarding defendant's motion to suppress was held on November 8, 9, and 23, 1999. At the hearing, the Court heard testimony with respect to Caliber's training from Jeff Gueli, Caliber's handler, and Terry Shoenbach, master trainer and owner of the Canine Academy where Caliber was trained. By stipulation of the parties, the Court has also considered the affidavit of Dr. Dan J. Craig, defendant's expert witness.

### Discussion

■■■ To be valid, a search warrant must be supported by probable cause. *United States v. Berry*, 90 F.3d 148, 153 (6th Cir.1996). Probable cause is defined as "a 'fair probability' that contraband or other evidence of a crime will be found in the place to be searched." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). Probable cause requires more than a suspicion of criminal activity, but less than prima facie proof. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990). An issuing judge's or magistrate's determination of probable cause is entitled to great deference, requiring only that, "in light of the totality of the circumstances, the [issuing judge or magistrate] had a 'substantial basis' for concluding that 'a search would uncover evidence of wrongdoing.' " *United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir.1994) (quoting *Illinois v. Gates*, 462 U.S. at 236, 103 S.Ct. at 2331).

■■■ In this case, the dog sniff is determinative of whether probable cause existed to search the UPS parcel.[6] "A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Diaz*, 25 F.3d 392, 393–94 (6th Cir.1994). However, "[f]or a positive dog reaction to support a determination of probable cause, the training and reliability of the dog must be established." *Id.* at 394.

#### 1. Affidavit In Support of Search Warrant Was Not Insufficient On Its Face

■■■ Defendant asserts that the affidavit filed in support of the search warrant was insufficient on its face because it "did not

---

**6.** The government does not contend that the four suspicious characteristics identified by Michalski are sufficient, by themselves, to establish probable cause for the search warrant. Furthermore, all parties agree that the validi-

ty of the second anticipatory search warrant depends upon the validity of the first search warrant because the second warrant was based upon the fact that the UPS parcel contained a controlled substance.

set forth specific facts concerning the exact training that Caliber has received; or the standards or criteria used to select Caliber for drug detection work." (Def.'s Post–Hr'g Mem. at 1). Defendant further asserts that "there was no specific articulation of the standards that the dog had to meet in order to successfully complete the training program, and the track record of the dog was summarized to a point that it was misleading and incomplete." [7] (*Id.*).

■ The affidavit filed in support of the search warrant, however, specifically states that Caliber "was trained and certified in detecting controlled substances," was "trained to detect the odor of controlled substances," and was certified by the United States Police Canine Association and the North American Police Work Dog Association. (Gov't Answer, Ex. A). The affidavit also states that Caliber is "trained as an aggressive response K–9, and will alert on a suspect parcel containing the scent of a controlled substance." (*Id.*). Furthermore, the affidavit also indicates that prior search warrants issued based upon Caliber's detection of a controlled substance had yielded approximately five pounds of cocaine and ninety-seven pounds of marijuana. (*Id.*) Such statements are sufficient to establish the training and reliability of a drug-detecting dog. *See Berry*, 90 F.3d at 153 (holding that reference within affidavit to dog as a "trained narcotics dog," and statements that dog was trained and qualified to conduct narcotics investigations was sufficient to establish dog's reliability). Training and performance records are not necessary to establish a dog's reliability. *Diaz*, 25 F.3d at 396; *see also Berry*, 90 F.3d at 153 ("[T]he affidavit need not describe the particulars of the dog's training.").

**7.** According to defendant, the affidavit should have contained specific facts regarding the number of positive responses by Caliber, the number of those responses that resulted in search warrants, and the number of searches actually resulting in the discovery of a controlled substance, as well as the exact training that Caliber had received, the criteria employed in selecting Caliber for training, and

Furthermore, the affidavit also sets forth the procedure used to conduct the dog sniff. The affidavit specifically states that Gueli and Caliber initially swept the area to ensure that it was "clear" of narcotics odor. Michalski then placed the parcel in the area, and Gueli and Caliber rechecked the area. Caliber alerted only on the suspect parcel. This accounting of the dog sniff further bolstered the dog's reliability. The Court is satisfied that Caliber's training and reliability were sufficiently established on the face of the affidavit filed in support of the search warrant; therefore, Judge Zaborowski had a substantial basis for concluding that a search of the parcel would uncover evidence of wrongdoing. Accordingly, defendant's first argument is rejected.

*2. Affidavit Was Not Materially Misleading Regarding Caliber's Training, Certification, and Reliability*

■ Defendant, however, further argues that even if the affidavit was not deficient on its face, the material contained within the affidavit was materially misleading as to the training, certification, and reliability of Caliber and, therefore, the search warrant was constitutionally invalid. (Def.'s Post–Hr'g Mem. at 2–9). Defendant bases his contention solely upon the testimony of his expert witness, Dr. Dan J. Craig.

According to Dr. Craig, the affidavit filed in support of the search warrant was misleading because Caliber was not certified for detecting the presence of controlled substances within parcels. [8] (Def.'s Post–Hr'g Mem. at 2–4). Dr. Craig also asserts that the "negative testing" [9] used during Caliber's training was inadequate

Caliber's exact "track record." (Def.'s Post–Hr'g Mem. at 3).

**8.** According to defendant, "Caliber's certification only covered buildings, vehicles, and luggage." (Def.'s Post–Hr'g Mem. at 2).

**9.** Negative testing refers to training in which no target odors are planted.

and that the trainer's practice of using more than one pass when a dog initially missed a planted target odor increased the likelihood of false positives and diminished the reliability of the dog. (*Id.* at 4–5). Dr. Craig also criticizes the "inadequate record keeping" used by Mr. Shoenbach during Caliber's training, and that Mr. Shoenbach had not properly implemented "extinction training." [10] (*Id.* at 5). Dr. Craig also attacks the "continuous reinforcement reward schedule" used with Caliber, arguing that it "encourages dogs to give a positive response even when the target odors are not present." (*Id.* at 6). "In the opinion of Dr. Craig, Caliber's training and utilization records indicate that he has been trained in a fashion that predisposes him to respond positively to areas where his handler suspects drugs are located." (*Id.* at 7).

■ The Court, however, is satisfied that Caliber was adequately trained and that Caliber's indication that the suspect parcel contained a controlled substance was reliable. Therefore, the Court rejects Dr. Craig's assertion that "[b]ased upon the deficiencies in the training and testing of 'Caliber,' and in recording his utilization in the real world ... the reliability of 'Caliber' to detect cocaine in real world searches of packages has not been established." (Craig Aff. at ¶ 15). The testimony presented at the evidentiary hearing establishes that Caliber "is generally certified as a drug detection dog." *Diaz*, 25 F.3d at 394. Contrary to defendant's assertions, training and performance records are not necessary to establish a dog's reliability. A dog's reliability may be established by testimony alone. *Id.* at 396.

■ This Court is satisfied that the testimony presented by TFA Gueli and Mr. Shoenbach sufficiently establishes Caliber's reliability. TFA Gueli testified that Caliber was certified by both the N.A.P.W.D.A. and the U.S.P.C.A. TFA Gueli testified that Caliber successfully completed both phase one and phase two of the Canine Academy's training program, and was currently undergoing phase three, which required one day of maintenance training per week for the life of the dog. Furthermore, TFA Gueli testified that Caliber had been trained to detect cocaine, marijuana, and heroin contained in suitcases, parcels, boxes, vehicles, private residences, and buildings. Caliber had also been subjected to "controlled negative testing." [11] Caliber's trainer, Mr. Shoenbach, also testified that he had trained and certified approximately one hundred police dogs, and that Caliber had successfully completed phases one and two of the program, was currently in phase three of the program, and, in his opinion, was a reliable drug dog.

The Court also notes that Dr. Craig's testimony is based upon limited information. According to Dr. Craig's affidavit, his testimony is based solely upon Shoenbach's direct examination. (Craig Aff. at ¶ 4). Dr. Craig never visited the Canine Academy, never personally spoke with Caliber's trainer, never personally spoke with Caliber's handler, and had never seen Caliber in action. " '[T]he limited information upon which [Dr. Craig's] opinion is based most assuredly detracts from his testimony.' " *Diaz*, 25 F.3d at 395 (quoting lower court).

The Court is satisfied that the affidavit filed in support of the search warrant was not misleading. The Court is satisfied that the first search warrant was valid

**10.** Extinction training refers to training designed to identify and eliminate a dog's propensity to alert based upon odors from objects regularly accompanying controlled substances, such as coffee or packaging materials.

**11.** TFA Gueli testified that Caliber had four recorded instances of "unknown" responses, in which Caliber alerted to the presence of a controlled substance, but none was found. (11/8/99 Hr'g Tr. at 108). This fact, however, by itself, does not automatically render Caliber unreliable. *See Diaz*, 25 F.3d at 396 ("In any event, a very low percentage of false positives is not necessarily fatal to finding that a drug detection dog is properly trained and certified.").

and, therefore, the second anticipatory search warrant was also valid. Accordingly, defendant's motion to suppress shall be denied.

### 3. The Good Faith Exception

 Even if this Court were to find, based upon the evidence provided during the evidentiary hearing, that Caliber was not reliable and that probable cause did not exist to support the search warrant, the Court is convinced that the subsequent search of the parcel would fall within the good faith exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Under the good faith exception, "evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective" is not barred by the exclusionary rule. *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir.1996)(quoting *Leon*, 468 U.S. at 905, 104 S.Ct. at 3411).

 There are four situations, however, in which the good faith exception is not applicable: (1) if the issuing magistrate was " 'misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;' " (2) if " 'the issuing magistrate wholly abandoned his judicial role;' " (3) if the affidavit was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' " or in other words, where " 'the warrant application was supported by [nothing] more than a "bare bones" affidavit;' " and (4) if the warrant was facially deficient. *United States v. Van Shutters, II*, 163 F.3d 331, 337 (6th Cir.1998) (quoting *Leon*, 468 U.S. at 914–15, 104 S.Ct. at 3416–17).

Defendant contends that the good faith exception cannot be applied to save this warrant because the agents were "admittedly familiar" with the requirements set forth in *United States v. Florez*, 871 F.Supp. 1411 (D.N.M.1994), and therefore, could not have acted in good faith reliance upon "an affidavit clearly insufficient under *Florez*." (Def.'s Post–Hr'g Mem. at 11). Defendant's argument, however, is unavailing for two reasons. First, the search in *Florez* was conducted without a search warrant. Therefore, *Florez* contains no guidance for agents regarding the type of information that a search warrant and supporting affidavit must contain to support a finding of good faith reliance.

Second, the Sixth Circuit has held that references within an affidavit that a dog is a trained narcotics dog are sufficient to establish the reliability of the dog. *See Berry*, 90 F.3d at 153. The Sixth Circuit has further stated that an affidavit "need not describe the particular's of a dog's training." *Id.* Therefore, as between any requirements set forth by the Sixth Circuit, and those set forth by the District Court of New Mexico, these agents were justified in relying upon those requirements specifically set forth by the Sixth Circuit. Given the requirements specifically set forth by the Sixth Circuit, the Court is of the opinion that under a " 'common sense manner' " reading of the warrant in this case, "only a police officer with extraordinary legal training would have detected any deficiencies." *Van Shutters, II*, 163 F.3d at 337 (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)). Therefore, the Court finds that, even if this Court were to determine that Caliber was not a reliable drug dog, the good faith exception to the exclusionary rule would apply and all evidence obtained as a result of the two search warrants would be nonetheless admissible.

### 4. Consent To Enter Facility and Seize Package

 Defendant next contends that the evidence should be suppressed because the agents did not have consent to enter the UPS facility on July 13, 1999, or to seize the suspect parcel. (Def.'s Post–Hr'g Mem. at 9–11). Michalski, however, testified that either Ronald Mestdagh, a loss prevention supervisor at the UPS facility, or Tim Littlefield, another employee of UPS, had given the agents verbal permis-

sion to enter the facility. (11/8/99 Hr'g Tr. at 38–39, 11/9/99 Hr'g Tr. at 6–7). Michalski also testified that the Interdiction Team routinely conducted inspections at the UPS facility. (*Id.* at 34). Based upon this testimony, the Court is convinced that the agents had a reasonable, good faith belief that consent had been given for them to enter the UPS facility. *See White Fabricating Co. v. United States,* 903 F.2d 404 (6th Cir.1990). The fact that Mestdagh or Littlefield do not specifically recall granting permission on July 13, 1999, provides no basis for this Court to discredit Michalski's testimony given the fact that the Interdiction Team routinely conducted inspections at the UPS facility without objection.

Furthermore, Michalski's limited handling of the parcel in order to conduct a dog sniff did not constitute a seizure and, therefore, no consent was required. *See United States v. Gant,* 112 F.3d 239, 241–42 (6th Cir.1997) (removing unattended bag from overhead compartment in order to conduct dog sniff did not implicate Fourth Amendment); *United States v. Johnson,* 990 F.2d 1129, 1132–33 (9th Cir.1993) (holding no seizure when officers removed checked luggage from tarmac and subjected it to dog sniff); *United States v. Goldstein,* 635 F.2d 356, 361 (5th Cir.1981) (holding no seizure when checked bag removed from luggage cart to facilitate dog sniff). Thereafter, once Caliber alerted on the parcel, the agents were justified in holding the parcel pending the obtainment of a search warrant. *See United States v. Sanders,* 719 F.2d 882, 886–87 (6th Cir.1983). Accordingly, defendant's argument fails.

### *Conclusion*

For the reasons stated above, defendant's motion to suppress shall be denied.

An Order consistent with this Opinion shall issue forthwith.