# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JANUARY 1999 SESSION



FILED

May 4, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 01C01-9712-CR-00582 |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. ANN LACY JOHNS, |
| CHARLES R. MENCER, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Suppression of Evidence) |

FOR THE APPELLANT:

JOHN S. COLLEY, III
P.O. Box 1476
Columbia, TN 38402

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

DARYL J. BRAND
Asst. Attorney General
John Sevier Bldg.
425 Fifth Ave., North
Nashville, TN 37243-0493

VICTOR S. JOHNSON, III
District Attorney General

KYMBERLY HAAS
Asst. District Attomey General
Washington Square, Suite 500
222 Second Ave., North
Nashville, TN 37201

OPINION FILED:_____

**AFFIRMED**

**JOHN H. PEAY,**
Judge

# O P I N I O N

The defendant was charged in the indictment with possession with intent to sell or deliver ten to seventy pounds of marijuana. He filed a motion to suppress the marijuana, which was denied. The defendant then entered a guilty plea, properly preserving for appeal two certified questions that the parties and the trial court agreed were dispositive of this case. He now presents one of those issues on appeal, that is, whether a search warrant affidavit that relies upon positive "alerts" to drugs by two trained drug dogs must include specific statements regarding the drug dogs' training, past performance, and experience in order to establish probable cause. We affirm the trial court's order denying his motion to suppress.

According to the evidence at the suppression hearing, Drug Enforcement Agent (DEA) Mark Lockwood, who was on duty at the Nashville International Airport, received a call from an agent at the Houston airport. Agent Lockwood testified the Houston agent had told him that a drug detection dog had positively "alerted" for narcotics in the suitcase of a passenger flying to Nashville. The tag on the suitcase reflected the name "Ricky Miller," who had flown from Nashville to Houston earlier that same day and had been scheduled to return to Nashville on a 4:35 p.m. flight but had changed his flight to 5:45 p.m.

Agent Lockwood testified he first saw the defendant arrive at the incoming flight's gate in Nashville at 7:40 p.m., while at the same time in the baggage tunnel, a second drug detection dog indicated the presence of narcotics in the suspected suitcase. Agent Lockwood testified he and other agents followed the defendant from the gate to the baggage carousel, where the defendant retrieved the suspected suitcase. According

2

to Agent Lockwood, he and the other agents approached the defendant, identified themselves, and asked to see the defendant's personal identification, which reflected the last name "Mencer." When asked whether the suitcase he was carrying was his, the defendant looked puzzled, said "Well, maybe it isn't," and put down the bag. The names on the luggage tag and the defendant's identification were different, but the address on the luggage tag and the address on the identification were the same.

Agent Lockwood testified he asked the defendant if he would consent to a search of his suitcase and the defendant replied, "No. I'd like to speak to my attorney." The defendant agreed, however, to accompany the agents to the airport drug interdiction office. On the way there, the defendant asked for his Miranda rights to be read to him, and an agent complied. Once at the office, Agent Lockwood again asked the defendant to consent to a search of his suitcase, and again the defendant declined, asking to speak to his attorney. Within five minutes, the defendant was allowed to call his attorney. In the meantime, however, a NCIC computer check revealed an outstanding arrest warrant for the defendant issued by the Nashville Metro Police Department in an unrelated case. The defendant was placed under arrest on this unrelated arrest warrant.

Agent Lockwood testified that because they were investigating whether the defendant was transporting narcotics, they decided to delay transporting the defendant for processing on the unrelated arrest warrant until they could execute a search warrant to search the defendant's suitcase. While the defendant waited at the airport drug interdiction office, the agents prepared the search warrant. The affidavit in support of the search warrant reads, in pertinent part, as follows:

> ON JANUARY 11, 1996, OFFICER JAMES GOODMAN AND OTHER
> MEMBERS OF THE DRUG INTERDICTION UNIT AT THE NASHVILLE,

TN AIRPORT RECEIVED INFORMATION FROM OFFICER SUSAN HUGHES OF THE HOUSTON HOBBY DRUG INTERDICTION UNIT. THE INFORMATION WAS IN REGARD TO A PERSON FLYING FROM HOUSTON HOBBY TO NASHVILLE, TN. ON SOUTHWEST AIRLINES FLIGHT # 649. [sic] FLIGHT 649 WAS SCHEDULED TO ARRIVE IN NASHVILLE, TN AT 7:30 PM, AND DID ARRIVE AT 7:40 P.M. OFFICER HUGHES RELAYED TO NASHVILLE OFFICERS THAT THE SUBJECT WAS FLYING UNDER THE NAME OF RICK MILLER, AND PROVIDED A DESCRIPTION OF THE SUBJECT. OFFICER HUGHES FURTHER ADVISED THAT THE MANNER IN WHICH THIS SUBJECT HAD CONDUCTED HIMSELF AT THE HOUSTON AIRPORT WAS OF A SUSPICIOUS NATURE IN THAT THE SUBJECT HAD FIRST BOOKED THE FLIGHT SCHEDULED TO DEPART AT 4:30 PM, BUT HAD CHANGED TO A LATER FLIGHT, EVEN THOUGH HE WAS AT THE AIRPORT IN TIME TO MAKE THE EARLIER FLIGHT. OFFICER HUGHES ALSO ADVISED THAT THE PERSON KNOWN AS MILLER AT THIS TIME HAD CHECKED ONE PIECE OF LUGGAGE AND HUGHES PROVIDED YOUR AFFIANT WITH A DESCRIPTION OF THE LUGGAGE. BECAUSE OF THE SUSPICIOUS NATURE OF MILLER'S (LATER IDENTIFIED AS MENCER) ACTIONS OFFICER HUGHES HAD A DRUG DETECTING CANINE, "ROBBIE", TO [sic] SNIFF THE LUGGAGE IN QUESTION FOR THE PRESENCE OF NARCOTICS INSIDE THE LUGGAGE. OFFICER HUGHES ADVISED YOUR AFFIANT THAT TRAINED DRUG DOG, "ROBBIE", DID INDICATE POSITIVE FOR THE PRESENCE OF NARCOTICS. BASED ON THIS INFORMATION, OFFICERS OF THE NASHVILLE AIRPORT DETAIL MET SOUTHWEST FLIGHT 649 UPON ITS ARRIVAL IN NASHVILLE,TN. OFFICERS IN NASHVILLE WERE ABLE TO LOCATE THE BAG IN QUESTION, AS IT ARRIVED IN THE BAGGAGE AREA. CANINE OFFICER RICKY WINFREY AND HIS TRAINED DRUG DOG STALLONE CONDUCTED A SECOND SNIFF OF THE SUSPECT LUGGAGE THAT HAD BEEN CHECKED BY MILLER(AKA MENCER) IN HOUSTON. THE TRAINED DRUG DOG STALLONE INDICATED POSITIVE FOR THE PRESENCE OF NARCOTIC ODOR COMING FROM THE LUGGAGE. BASED ON THE ABOVE LISTED INFORMATION, THE AFFIANT BELIEVES PROBABLE CAUSE DOES EXIST FOR THE ISSUANCE OF A SEARCH WARRANT.

At approximately 10:50 p.m., the signed search warrant was returned to the airport drug interdiction office, where the defendant was waiting. The search of his suitcase revealed two packages of marijuana wrapped in duct tape, each weighing approximately ten pounds.

The defendant argues that the affidavit is insufficient because it fails to establish the dogs' reliability in detecting drugs. According to the defendant, the dogs' reliability should have been established in the affidavit with information regarding the

4

dogs' training, breeding, past performance in detecting narcotics, experience, certification, "pointing" techniques, and "other qualifications which would give rise to a probable cause finding based on their actions/reactions." The defendant contends that because the affidavit did not contain such information, the portion of the affidavit regarding the drug detecting dogs "hitting" or positively indicating that his suitcase contained narcotics must be disregarded. Without this information in the affidavit, the defendant concludes, the affidavit fails to show probable cause, and accordingly, the marijuana found during the search must be suppressed.

This is a case of first impression in Tennessee. A panel of our Court has previously held that the State had proven probable cause for a warrantless search by introducing evidence that a trained narcotics detection dog certified by the United States Police K-9 Association had "alerted" for the presence of narcotics in a vehicle lawfully stopped for violation of a license plate lighting law. State v. Dennis R. England, No. 01C01-9702-CR-00064, Sumner County (Tenn. Crim. App. filed March 31, 1998, at Nashville), (citing State v. James Smith, Jr., No. 38, Shelby County (Tenn. Crim. App. filed December 14, 1988, at Jackson)(holding that an affidavit including information from two anonymous callers and stating that a trained and "reliable drug dog" had detected drugs in a vehicle provided probable cause to issue a search warrant)) rev. granted (Tenn. January 19, 1999). No Tennessee appellate court, however, has previously considered our issue here, i.e., whether a search warrant affidavit that characterizes narcotics dogs as "trained drug dogs" sufficiently delineates the dogs' training and reliability in detecting drugs and thus establishes probable cause, even though the affidavit does not delineate the particulars of the dogs' training, experience, and past performance.

5

A magistrate's decision to issue a search warrant requires the exercise of judicial discretion, and his or her judgment is entitled to great deference. State v. Melson, 638 S.W.2d 342, 357 (Tenn. 1982); Hampton v. State, 148 Tenn. 155, 252 S.W. 1007 (1923). Even so, an appellate court may invalidate a search warrant when the content of the underlying affidavit is insufficient as a matter of law to satisfy the constitutional requirements of probable cause. State v. Longstreet, 619 S.W.2d 97, 98-99 (Tenn. 1981).

In reviewing a search warrant affidavit for probable cause, we must read the language "in a commonsense and practical manner," Melson, 638 S.W.2d at 357, and the affiant's words should be given their natural meaning and interpretation, State v. Smith, 477 S.W.2d 6, 8 (Tenn. 1972); State v. William Dorris Bucy, II, No. 02C01-9709-CC-00363, Henry County (Tenn. Crim. App. filed December 10, 1998, at Jackson). The probability of criminal activity, not a prima facie showing of a crime, is the standard for probable cause. Beck v. Ohio, 379 U.S. 89, 96 (1964).

Although the defendant urges us to follow cases of different jurisdictions that require varying specifics regarding a drug dog's training and certification, we are persuaded by the holding in a United States Sixth Circuit case. In United States v. Berry, 90 F.3d 148, 150 (6th Cir. 1996), the defendant challenged a search warrant affidavit that stated a "'drug sniffing or drug detecting dog' 'reacted or alerted' to defendant's automobile, indicating the probable presence of controlled substances within the vehicle. Further, the affidavit stated that the dog and its handler 'have both been trained, qualified in the processes and procedures required to properly conduct such [narcotic] investigations.'" Id. Berry moved to suppress the drugs that were found pursuant to the search warrant, but his motion was denied. Id. at 153. He then appealed, arguing that

6

the affidavit in support of the search warrant was insufficient because it failed to establish the dog's "reliability and credibility." Id. Relying on other federal circuit cases, the Sixth Circuit determined:

> Contrary to defendant's suggestion, to establish probable cause, the affidavit need not describe the particulars of the dog's training. Instead, the affidavit's accounting of the dog sniff indicating the presence of controlled substances and its reference to the dog's training in narcotics investigations was sufficient to establish the dog's training and reliability. See United States v. Daniel, 982 F.2d 146, 151 n.7 (5th Cir. 1993) (rejecting defendant's argument that an affidavit must show how reliable a drug-detecting dog has been in the past in order to establish probable cause); United States v. Venema, 563 F.2d 1003, 1007 (10th Cir. 1977)(stating that an affidavit in support of a search warrant need not describe the drug-detecting dog's educational background and general qualifications with specificity to establish probable cause).

Id.; see United States v. Cook, No. 89-5947, 1990 WL 70703 (6th Cir. May 29, 1990)(unpublished)(holding that an affidavit stated probable cause by referring to drug-sniffing dogs as "narcotic dog Moose and narcotic dog Bandit" because such references reasonably implied training).[1]

In this case, the affidavit included the words "trained drug dog" to describe Robbie and Stallone, and one of the dogs, Robbie, was also described as a "drug detecting canine." The affidavit specifically stated that both dogs had positively indicated the presence of narcotic odor emanating from the defendant's suitcase. We believe this information was sufficient to establish the dogs' training and reliability in this case. See Berry, 90 F.3d at 153.

---

[1]The Colorado Supreme Court has noted,

> Requiring "a formal recitation of a police dog's curriculum vitae" could lead to endless challenges to the facial sufficiency of affidavits based on the failure to include in minute detail information of dubious value about the background of the dog involved. For much the same reason we reject the assertion that common sense is incapable of supplying the connection between the dog's reaction to the safe, as described in the affidavit, and the inference that the safe contained drugs.

People v. Unruh, 713 P.2d 370, 382 (Colo. 1986)(citation omitted).

Given this as well as the other information contained in the affidavit, a magistrate exercising judicial discretion could find probable cause to issue a search warrant. In addition to independent "alerts" by two drug dogs,[2] the affidavit stated that the defendant had acted peculiarly by booking a flight scheduled to depart at 4:30 p.m. and then changing to a later flight, even though he was at the airport in ample time to make the earlier flight. The affidavit also contained facts that the defendant was traveling under a false name, although the address on his luggage tag was correct. This information is sufficient to establish probable cause in this case.

Finding that the language of the search warrant sufficiently established the drug dogs' reliability and that the affidavit established probable cause to issue a search warrant, we affirm the trial court's order denying the defendant's motion to suppress. The defendant's conviction and sentence are affirmed.

_____
JOHN H. PEAY, Judge


CONCUR:


_____
JERRY L. SMITH, Judge


_____
THOMAS T. WOODALL, Judge

---

[2]This is not an ordinary one-dog drug-sniffing case. This is a two-dog case, with one drug dog independently corroborating the other. Although the defendant argues that one unreliable source cannot corroborate another, nothing indicates that Robbie and Stallone were unreliable.