[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 30 2001
THOMAS K. KAHN
CLERK

-----------------------------------------

No. 99-11377

-----------------------------------------

D.C. Docket No. 97-00035-CR-01-R

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODNEY ALLEN SMITH,
RICKY LAMAR WADE, a.k.a. Bill, et al.

Defendants-Appellants.

-------------------------------------------------------------------
Appeals from the United States District Court
for the Northern District of Georgia
-------------------------------------------------------------------
**(January 30, 2001)**

Before EDMONDSON and BIRCH, Circuit Judges, and BLACKBURN*,District
Judge.

_____
*Honorable Sharon Lovelace Blackburn, U.S. District Judge for the Northern District of
Alabama, sitting by designation.

PER CURIAM:

Defendants Rodney Smith, Ricky Wade, and Barbara Sue Culberson appeal their convictions and sentences for many crimes that were associated with conspiring to manufacture and to possess with intent to distribute methamphetamine.[1] We affirm.

I.

Floyd County police and DEA agents, after observing Defendants pick up boxes at a chemical supply company from which Defendants had ordered glassware and chemicals, searched Culberson's home (where Wade[2] and Smith were also staying). The police found a recipe and a drawing of how to make methamphetamine, found equipment to make methamphetamine, and found different chemicals necessary to make methamphetamine. Defendants claimed that

---

[1] Defendants were convicted of 3 counts of conspiring to manufacture methamphetamine, of attempting to manufacture methamphetamine, and of attempting to possess with intent to distribute methamphetamine, 18 U.S.C. § 2 and 21 U.S.C. §§ 841 & 846; one count of possession of a listed chemical, 21 U.S.C. § 841(d)(1) and 18 U.S.C. § 2; and one count of possession of a prohibited flask. 21 U.S.C. §§ 841 & 843(a)(6) and 18 U.S.C. § 2. Smith was also convicted on 12 counts of use of a communication facility in committing drug offense in a conspiracy. 21 U.S.C. §§ 843(b) & 841.

[2] Defendant Wade is married to Defendant Culberson.

2

they were planning to use the equipment and chemicals to make perfume and fragrant lotions. The jury delivered guilty verdicts for all Defendants.

At the sentencing hearing, the government and the defense presented experts to testify on drug quantity.[3] The government's expert testified that 2,011 grams of methamphetamine could be made using the most abundant precursor chemical; 91 grams using the least abundant precursor. The district judge found "by a preponderance of the evidence that the Defendants could have produced 2,011 grams of methamphetamine."

A person found with at least 5 grams of methamphetamine is subject to 40 years in prison. 21 U.S.C. § 841(b)(1)(B)(viii). If 50 grams of methamphetamine is involved, the maximum sentence is life in prison. 21 U.S.C. § 841(b)(1)(A)(viii). So, based on the finding of 2,011 grams of methamphetamine, the judge sentenced Defendants to 30 years in prison.

---

[3]One of the experts was Defendant Smith, who has a Masters degree in chemistry.

## II.

Defendants ask us to reconsider their sentences in light of the Supreme Court's decision in Apprendi v. New Jersey, 120 S. Ct. 2348, 2362-63 (2000) (5-4 decision), which -- in the context of a state firearms case -- says that "any fact [other than prior conviction] that increases sentencing beyond the statutory maximum must be submitted to the jury and found beyond a reasonable doubt." Id. at 2362-63. The Court's decision was anticipated in Jones v. United States, although it did not need to reach the issue resolved in Apprendi. 119 S. Ct. 1215, 1224 n.6 (1999).

Defendants never objected at their sentencing hearing when the judge determined drug quantity by a preponderance of the evidence; so our review is limited to the stringent plain error standard, an exception to the broad contemporaneous objection rule. United States v. Swatzie, 228 F. 3d 1278, slip op at 46 (11th Cir. 2000). Plain error review requires (1) error, (2) that is plain, and (3) that affects substantial rights. Id. But even if all of these elements exist, the court may exercise its discretion to correct the error only if such error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 117 S. Ct. 1544, 1548-49 (1997).

4

This circuit applies <u>Apprendi</u> to sentencing under 21 U.S.C. §§ 841(b)(1)(A) & (B), which determine the sentencing ranges based on drug quantity. <u>United States v. Rogers</u>, 228 F.3d 1381, slip op at 82 (11th Cir. 2000). With no finding of drug quantity, the statutory maximum is 20 years for each count. 21 U.S.C. § 841(b)(1)(C).[4] <u>Apprendi</u> requires the judge to submit to the jury an element of sentencing that would increase the sentence beyond the statutory maximum. <u>Apprendi</u>, 120 S. Ct. at 2361 n.13. Because Defendants were sentenced under §841(b)(1)(A) and because their 30-year sentence on each count exceeds the 20-year statutory maximum for each count, an error has occurred.

But failure to submit the issue of drug quantity to the jury did not affect Defendants' substantial rights. <u>Apprendi</u> did not create a structural error that would require per se reversal.[5] <u>Swatzie</u>, 228 F.3d at slip op at 48. And Defendants have

---

[4]This maximum may be increased to thirty years if a Defendant has a prior felony drug conviction. <u>Apprendi</u> does not apply to prior convictions.

[5]Structural error occurs only in the rare instance involving a "structural defect affecting the framework within the trial proceeds, rather than simply an error in the trial process itself." <u>Arizona v. Fulminante</u>, 111 S. Ct. 1246, 1265 (1991). Examples of structural error involve extreme deprivations of constitutional rights, such as denial of counsel, denial of self representation at trial, and denial of a public trial. <u>See</u> <u>Neder v. United States</u>, 119 S. Ct. 1827, 1833 (1999) (listing examples of structural error). Failure to submit the issue of drug quantity to the jury is just an element of the trial process and does not rise to the level of structural error requiring per se reversal. <u>See id</u>. (concluding that failure to include element of offense in jury instruction is not structural error because it "does not <u>necessarily</u> render a criminal trial fundamentally unfair or unreliable vehicle for determining guilt or innocence") (emphasis in original); <u>see also</u> <u>United States v. Fern</u>, 155 F.3d 1318, 1327 (11th Cir. 1998).

5

not been prejudiced because, even without a specific drug-quantity finding,

Defendants were subject to 30 years or more in prison under 21 U.S.C. §

841(b)(1)(C) for their crimes.[6]  The jury concluded that Defendants had at least

some quantity of methamphetamine: Defendants were convicted on three counts.

The statutory maximum on each count is 20 years, making Defendants subject to a

possible maximum sentence of 60 years altogether.  When the ultimate sentence

does not exceed the aggregate statutory maximum for the multiple convictions, no

effect on substantial rights has occurred that must be remedied.  Also, the fairness,

integrity, and public reputation of the judicial proceedings are not subject to serious

question.[7]

---

[6]Methamphetamine is a schedule II drug.  21 U.S.C. § 812.

[7]Defendants were properly sentenced according to well established circuit law at the time; and they made no objection.  They had fair notice of the charges against them and of the sentencing consequences based on drug quantity.  Defendants were represented by counsel.  See Pulliam v. Tallapossa County Jail, 185 F.3d 1182, 1188 (11th Cir. 1999).  They had an opportunity to present evidence about drug quantity to a neutral factfinder.  See Rose v. Clark, 106 S. Ct. 3101, 3106 (1986).  Defendants do not dispute their guilt, but only one factor – of many factors – applied to calculate their sentences.  And four of the justices considering Apprendi found no constitutional violation at all.  While the dissents do not lessen the binding effect of Apprendi as the law, this lack of unanimity supports our conclusion that the district court's acts were not so extremely bad to threaten the fairness, integrity, and public reputation of the judicial system.

The only other issue that merits discussion is the district court's use of the most abundant precursor to determine drug quantity.[8] We review the sentencing court's findings of drug quantity for clear error. United States v. Newsome, 998 F.2d 1571, 1577 (11th Cir. 1993).

In determining drug amount when no drugs have been seized, the sentencing guidelines direct the district court to "approximate the quantity of the controlled substance. . . . consider[ing] . . . the size or capability of any laboratory involved." U.S.S.G. § 2D1.1 (n. 12). Such approximations should be reasonably fair, accurate, and conservative, and not merely speculative. United States v. Zapata, 139 F. 3d 1355, 1359 (11th Cir. 1998) (reversing drug quantity determination because judge "rounded up").

The government's expert testified that she found many chemicals in different amounts needed to make methamphetamine, including three 1,000 ml bottles of

---

[8]On this appeal, Defendants also argue that 1) the search warrant for Culberson's home was not issued under probable cause; 2) the search warrant was executed unlawfully; 3) the court erred in admitting Smith and Wade's prior convictions under Fed. R. Evi. 404(b) and Culberson's prior conviction as impeachment under Fed. R. Evi. 806; 4) insufficient evidence was presented to support Defendants' convictions; 5) drug quantity should have been determined separately for each defendant; and 6) Smith's sentence should not have been enhanced for obstruction of justice. We have considered and now reject these arguments as meritless.

methylamine. Methylamine, when combined with phenyl-2-propanone (P-2-P), is a precursor to making methamphetamine. Based on the 3000 ml of methylamine (the most abundant precursor), the expert testified that 4,023 grams of methamphetamine could result, but that in reality it would yield about a 50% conversion (or 2,011 grams) once reaction and crystallization actually occured. Defendants do not dispute the expert's calculation if the most abundant precursor is used as the measure. Defendants only argue that the district court should have applied the least abundant precursor instead.

The trial court did not err in accepting the most abundant precursor to determine drug quantity. While the district court should be accurate and cautiously moderate in estimating drug quantity, the court is not required to disregard calculations based on the most abundant precursor in favor of a lesser abundant precursor.[9] See United States v. Funk, 985 F. 2d 391, 393 (8th Cir. 1993) (rejecting uniform rule that requires least abundant precursor and accepting drug quantity based on most abundant precursor); United States v. Bertrand, 926 F. 2d 838, 846-47 (9th Cir. 1991)(estimating drug quantity in dismantled lab based on most

---

[9]An opposite rule would allow Defendants to limit their sentences by keeping on hand only a small supply of a particular chemical used to manufacture the drug, despite the presence of large amounts of other necessary chemicals.

abundant ingredient rather than amount of actual drug or absence of other ingredients).

Courts may properly estimate drug quantity based on available precursors when other necessary ingredients are absent. United States v. Hyde, 977 F.2d 1436, 1440 (11th Cir. 1992) (calculating methamphetamine based on precursor that defendant possessed when other precursors were missing). Likewise, the sentencing court may also estimate drug quantity based on the most abundant chemical even if lesser abundant precursors are also present. Thus, the district court did not clearly err in estimating drug quantity at 2,011 grams of methamphetamine.

AFFIRMED.