# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3232

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Joseph Vincent Hunt, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 9, 1999

Filed: March 30, 1999

_____

Before WOLLMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Joseph Hunt appeals his conviction and sentence for conspiracy to manufacture methamphetamine. We affirm.

## I.

Beginning in 1996, Hunt and co-conspirator Donald Benefield agreed to manufacture methamphetamine. The two maintained a methamphetamine laboratory in Hunt's cabin in a rural area of Ripley County, Missouri. They manufactured eight

to twelve grams of methamphetamine on seven occasions. On one occasion, they attempted to make 100 grams, but were unsuccessful.

In April of 1997, Hunt and Benefield invited Richard Kearbey, Hunt's brother-in-law, to assist them in the manufacturing process. Kearbey agreed to provide phosphorous and ephedrine, and Hunt agreed to provide all of the other necessary chemicals and equipment. Unbeknownst to Hunt or Benefield, Kearbey was assisting federal authorities pursuant to a cooperation agreement stemming from a prior arrest. Kearbey informed Herman Hogue, a Drug Enforcement Administration agent, about Hunt and Benefield's plans. Based on this information, Hogue obtained a search warrant for Hunt's property.

On April 24, 1997, Kearbey delivered to Hunt's cabin 2,088 grams of ephedrine, which had been crushed and soaked by government agents. Hunt, Benefield, and Kearbey measured out the necessary quantities of iodine, ephedrine, and phosphorous. Hunt and Benefield then mixed the chemicals in a flask and thereafter performed all the tasks necessary for methamphetamine production.

Later the same day, government agents executed the search warrant and arrested Hunt and Benefield. Benefield pleaded guilty before trial and testified against Hunt pursuant to a cooperation agreement.

The district court[1] denied Hunt's motions for dismissal of the indictment based on outrageous government conduct. Following two days of testimony, a jury convicted Hunt of conspiring to manufacture methamphetamine. See 21 U.S.C. § 846. At sentencing, the district court found Hunt responsible for at least 100 grams but less than 300 grams of actual methamphetamine. The district court also enhanced Hunt's base

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

offense level pursuant to section 3C1.1 of the United States Sentencing Guidelines, finding that Hunt had committed perjury during trial. The district court then sentenced Hunt to a term of 200 months' imprisonment and five years' supervised release.

On appeal, Hunt raises several challenges to his conviction and sentence. He first argues that his conviction should be set aside and the indictment quashed because the government engaged in outrageous conduct in violation of the Due Process clause of the Fifth Amendment. We review a claim of outrageous government conduct de novo. See United States v. Cannon, 88 F.3d 1495, 1506 (8th Cir. 1996).

The defense of outrageous government conduct is similar to, although different from, the defense of entrapment. Whereas the defense of entrapment focuses on the predisposition of the defendant to commit the crime, the defense of outrageous government conduct focuses on the government's actions. See id.

Our cases recognize the defense of outrageous government conduct, see United States v. Pardue, 983 F.2d 835, 841 (8th Cir. 1993); United States v. Huff, 959 F.2d 731, 734 (8th Cir. 1992); United States v. Mazzella, 768 F.2d 235, 238 (8th Cir. 1985), but only in cases involving "'the most intolerable government conduct.'" United States v. Musslyn, 865 F.2d 945, 947 (8th Cir. 1989) (quoting United States v. Esch, 832 F.2d 531, 538 (10th Cir. 1987)). Government conduct which is "so outrageous and shocking that it exceed[s] the bounds of fundamental fairness," United States v. Johnson, 767 F.2d 1259, 1275 (8th Cir. 1985), may violate the Due Process clause and bar a subsequent prosecution. See United States v. Russell, 411 U.S. 423, 431-32 (1973). "The level of outrageousness needed to prove a due process violation is 'quite high,' and the government's conduct must 'shock the conscience of the court.'" Pardue, 983 F.2d at 847 (quoting United States v. Jacobson, 916 F.2d 467, 469 (8th Cir. 1990)). We recognize that government agents "may go a long way in concert with the individual in question without being deemed to have acted so outrageously as to violate

due process." United States v. Kummer, 15 F.3d 1455, 1460 (8th Cir. 1994) (quoting United States v. Quinn, 543 F.2d 640, 648 (8th Cir. 1976)).

Hunt asserts that the government crossed the line of fundamental fairness when Kearbey provided 2,088 grams of ephedrine, a chemical necessary for the production of methamphetamine. We disagree. As a general rule the government may supply some item of value that the drug ring requires. See Russell, 411 U.S. at 432. In order to infiltrate the underworld of drug production federal agents often must participate in the illegal enterprise. Id. In the instant case, it was Hunt who invited Kearbey to participate in an ongoing scheme to manufacture methamphetamine. Having been so invited, it was not unreasonable for Kearbey to contribute something of value to the conspiracy in order to continue the investigation. Accordingly, we cannot say that, based on these facts, the government's conduct violated "fundamental fairness" or shocked "the universal sense of justice." Id. (quoting Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 246 (1960)).

Hunt next argues that the district court erroneously admitted testimony of governmental witnesses who testified pursuant to cooperation agreements, contending that any promise made by the government to a witness in exchange for testimony violates 18 U.S.C. § 201(c)(2). We recently rejected a similar argument in United States v. Johnson, No. 98-2671, slip. op. at 9 (8th Cir. Feb. 8, 1999). See also United States v. Singleton, 165 F.3d 1297 (10th Cir. 1999) (en banc); United States v. Haese, 162 F.3d 359 (5th Cir. 1998); United States v. Ware, 161 F.3d 414 (6th Cir. 1998). In Johnson, we concluded that "the statute does not sweep so broadly as to prevent prosecutors from offering leniency to an individual in exchange for truthful testimony." Johnson, No. 98-2671, slip. op. at 9. The district court therefore did not err in admitting the testimony of the cooperating witnesses.

Hunt argues that the district court erred in calculating his base offense level under the sentencing guidelines. See U.S.S.G. § 2D1.1. He challenges the district

court's findings regarding the quantity of methamphetamine attributed to him. Hunt also argues that the district court erred when it enhanced his base offense level for obstruction of justice. See U.S.S.G. § 3C1.1. We review the district court's factual findings for clear error, and its application of the sentencing guidelines de novo. See United States v. Williams, 109 F.3d 502, 509 (8th Cir. 1997).

The district court held Hunt responsible for at least 100 grams but less than 300 grams of actual methamphetamine, resulting in a base offense level of 32. Hunt argues that he was responsible for only 60 to 70 grams. In determining the base offense level, the district court may consider the "size or capability of any laboratory involved." U.S.S.G. § 2D1.1, comment. (n.12). To determine the manufacturing capability of the laboratory, it is appropriate to rely upon the testimony of a qualified expert. See United States v. Wagner, 884 F.2d 1090, 1097-98 (8th Cir. 1989). Jack Raney, a chemist and agent for the Drug Enforcement Administration, testified that based upon the amount of precursors such as ephedrine and pseudoephedrine, the production capacity of Hunt's laboratory was 112 grams of actual methamphetamine. This testimony was consistent with Hunt's admitted objective of manufacturing 100 grams of methamphetamine on the day he was arrested. Accordingly, the district court did not err when it held Hunt responsible for at least 100 grams but less than 300 grams of actual methamphetamine. See United States v. Funk, 985 F.2d 391, 393 (8th Cir. 1993) (upholding a sentence where the quantity of methamphetamine was estimated based upon the manufacturing capability of the laboratory).

The district court also imposed a two-level enhancement for obstruction of justice. See U.S.S.G. § 3C1.1. "A defendant is subject to an obstruction of justice enhancement under section 3C1.1 if he testifies falsely under oath in regard to a material matter and does so willfully rather than out of confusion or mistake." United States v. Chadwick, 44 F.3d 713, 715 (8th Cir. 1995) (per curiam). A district court's enhancement for obstruction of justice is a factual finding that we review for clear error. See United States v. Garin, 103 F.3d 687, 689 (8th Cir. 1996).

At trial, Hunt attempted to persuade the jury that Kearbey had threatened him, thus forcing him to manufacture methamphetamine. Hunt testified that Kearbey stated that if Hunt did not help Kearbey manufacture methamphetamine and Kearbey lost his farm, Hunt's sister and nieces "would pay for it." The district court found that this testimony by Hunt constituted perjury, a finding that we cannot say is clearly erroneous.

Finally, Hunt argues that the district court should have departed downward because the government had engaged in sentencing entrapment. Sentencing entrapment occurs when "outrageous government conduct overcomes the will of an individual predisposed only to dealing in small quantities" for the purpose of increasing the amount of drugs in the conspiracy and the resulting sentence of the entrapped defendant. See United States v. Rogers, 982 F.2d 1241, 1245 (8th Cir. 1993) (citing United States v. Lenfesty, 923 F.2d 1293, 1300 (8th Cir. 1991)). Hunt contends that he was not predisposed to manufacture 100 grams of actual methamphetamine. Specifically, he claims that the amount of methamphetamine attributable to him would be significantly less without the ephedrine supplied by Kearbey. We disagree. Hunt admitted that he intended to manufacture 100 grams of methamphetamine. Indeed, Benefield testified that he and Hunt attempted to manufacture 100 grams of methamphetamine in 1996 but that they had "messed it up." In light of the laboratory's capacity to manufacture 112 grams of actual methamphetamine, coupled with Hunt's admission that he had manufactured eight to twelve grams of methamphetamine on seven occasions prior to his arrest, this is not a case in which the government overcame any predisposition on Hunt's part to deal only in smaller quantities of methamphetamine. See United States v. Williams, 109 F.3d 502, 512 (8th Cir. 1997).

The judgment and sentence are affirmed.

A true copy.

Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.