# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2392

_____

United States of America,　　　　　　 *
　　　　　　　　　　　　　　　　　　　 *
　　　　Plaintiff-Appellee,　　　　　　 *
　　　　　　　　　　　　　　　　　　　 *　 Appeal from the United States
　　　　v.　　　　　　　　　　　　　　 *　 District Court for the
　　　　　　　　　　　　　　　　　　　 *　 Eastern District of Arkansas.
Harold D. Ray,　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　 *
　　　　Defendant - Appellant.　　　　 *

_____

Submitted: April 10, 2001

Filed: May 8, 2001

_____

Before WOLLMAN, Chief Judge, MURPHY, Circuit Judge, and CARMAN, Judge.[1]

_____

MURPHY, Circuit Judge.

　　　Harold D. Ray was convicted by a jury of conspiracy to possess with intent to distribute marijuana, aiding and abetting another to possess with intent to distribute approximately 34 pounds of marijuana, and attempted witness tampering. The district court sentenced him to 97 months on each count, to be served concurrently. He appeals, arguing insufficiency of the evidence, double jeopardy, violation of the Speedy Trial Act, errors in admission of evidence and in comments to the jury, and

_____

[1]The Honorable Gregory W. Carman, Chief Judge for the United States Court of International Trade, sitting by designation.

violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  We affirm his convictions but remand for resentencing on the drug counts.

Harold Ray and Randy Ellis were stopped by United States Customs agents shortly after they arrived in a chartered airplane at the Shreveport, Louisiana airport on December 1, 1996.  Ellis was a drug trafficker who routinely transported marijuana from Texas to Arkansas and Tennessee, and agents discovered what was later determined to be 34 pounds of marijuana in his luggage.  A federal grand jury returned an indictment on November 13, 1997 against  eleven defendants, including Ray and Ellis.  In this original indictment Ray was charged with one count of conspiracy to possess with intent to distribute marijuana from May 1995 through November 1997.

Ellis and other members of the conspiracy pleaded guilty and agreed to cooperate with authorities, and Ray and another defendant went to trial in July 1998.  During trial, defendants moved for a mistrial.  The court granted the motion, and a second trial began in November 1998.  The jury was unable to reach a verdict, however, and a mistrial was declared.  On the government's motion, the indictment against Ray was dismissed.  Another indictment was returned on July 13, 1999, charging him with three counts: conspiring to possess with intent to distribute marijuana from spring 1996 through December 30, 1996, in violation of 21 U.S.C. §§ 841 and 846; aiding and abetting another on or about December 1, 1996 to possess with intent to distribute approximately 34 pounds of marijuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841; and attempting on or about April 24, 1998 to persuade a witness to provide false testimony, in violation of 18 U.S.C. § 1512(b)(1).  Ray moved to dismiss the indictment on Fifth Amendment grounds of double jeopardy.  The motion was denied, and Ray went to trial on the new indictment.

Randy Ellis testified at trial that Ray had been with him when he purchased the marijuana that was later transported by plane to Shreveport.  He said he had promised

Ray that he would give him two or three pounds if he would go along on the trip. Judi Ellis testified that on several occasions she sold marijuana to Ray that her husband had smuggled into Arkansas. She extended Ray credit because he usually did not have money to pay for the drugs until after he sold them. On one occasion, however, Ray paid her $6,400 in advance for eight pounds. Nelson Spears testified that during late spring 1996 he had purchased up to two pounds of marijuana from Ray. He also said that Ray had asked him before his second trial to testify that Ray was not part of the conspiracy. At the time Ray did not know that Spears had made a plea agreement with the government, and Spears taped a subsequent conversation during which Ray again asked him to testify falsely. That tape and a transcript prepared by Ray were received into evidence.

The jury found Ray guilty on all three counts, and Ray's subsequent motion for a judgment of acquittal or for a new trial was denied. At sentencing the court found by a preponderance of evidence that Ray was responsible for the possession of between 60 and 80 kilograms of marijuana and assigned him a base offense level of 22. See U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(9). His offense level was adjusted to 26 for the use of a chartered airplane to transport the marijuana, see id. at § 2D1.1 (b)(2), and he received a two level enhancement for obstruction of justice. See id. at § 3C1.1. He was assessed six criminal history points which placed him in criminal history category III, and his sentencing range was calculated at 97-121 months. See id. at § 5A. The court sentenced Ray to 97 months on each count, to be served concurrently.

Ray appeals his conviction and sentence. He claims that his convictions must be reversed because the government did not show he intended to distribute marijuana and that there was insufficient evidence that he had tried to persuade Spears to testify falsely at his trial. He contends that his third trial subjected him to double jeopardy in violation of the Fifth Amendment and that the Speedy Trial Act was violated. See 18 U.S.C. §§ 3161 et seq. He also argues that the court made prejudicial remarks to the

jury, erred in admitting his conversation with Spears into evidence, misapplied the sentencing guidelines, and failed to submit the quantity of marijuana to the jury. The government asserts that there was sufficient evidence from which a jury could find Ray guilty on all three counts, that Ray was not placed in double jeopardy, that his speedy trial rights were not violated, and that the district court did not make improper comments or err in admitting evidence or in its application of the sentencing guidelines. The government concedes, however, that Ray's sentences on the drug counts must be vacated under Apprendi and the case remanded for resentencing.

A judgment of acquittal is appropriate "only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged." United States v. Mundt, 846 F.2d 1157, 1158 (8th Cir.1988). To support a conviction for conspiracy, the government must show: 1) the existence of a conspiracy with an illegal purpose, 2) that the defendant was aware of the conspiracy, and 3) that the defendant knowingly became a part of the conspiracy. See United States v. Jiminez-Perez, 238 F.3d 970, 973 (8th Cir. 2001). To support a conviction for aiding and abetting, the government must show: 1) that the defendant associated himself with an unlawful venture, 2) that he participated in it with the goal of bringing it about, and 3) that he sought by his actions to make it succeed. See United States v. Castillo, 171 F.3d 1163, 1166 (8th Cir. 1999).

Ray's claim that his drug convictions must be reversed because the government did not show that he intended to distribute marijuana is without merit. The government was required to prove that Ray involved himself in a conspiracy and aided and abetted another to distribute the marijuana, and it provided such evidence through Randy Ellis' testimony. The jury could infer that Ellis had the intent to distribute marijuana from the large quantity he was found to have possessed. See United States v. Gonzalez-Rodriguez, 239 F.3d 948, 952 (8th Cir. 2001). Ray's conviction for attempted witness tampering was supported by Spears' testimony and the tape and transcript documenting

the conversation in which Ray urged him to testify falsely. The jury chose not to believe Ray's explanation that he had only been trying to convince Spears to talk to his attorney, and we cannot say its finding was unreasonable. After reviewing the record, we conclude that there was sufficient evidence to support all three of Ray's convictions.

Ray argues that the court erred when it denied his motion to dismiss the second indictment on the grounds that it was barred by double jeopardy. He contends that his Fifth Amendment rights were violated because the second mistrial gave the government an opportunity to correct errors in the case submitted to the first grand jury and to increase its chances of securing a conviction by rewording the indictment. In support of his argument, he cites dictum in Downum v. United States, 372 U.S. 734, 736 (1963), which states: "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict are examples when jeopardy attaches." Ray's arguments are without merit because the court did not declare a mistrial in order to give the government a better chance of convicting him. Double jeopardy does not bar a retrial after the granting of a mistrial because the jury was unable to reach a verdict. See Richardson v. United States, 468 U.S. 317, 324 (1984).

Under the Speedy Trial Act, a defendant's trial must commence within seventy days from when the indictment is first published or from the date he makes his first appearance before a judicial officer, whichever is later. See 18 U.S.C. § 3161(c)(1). Ray was tried three times, with the first two trials resulting in a mistrial. Under the Act a mistrial requires the clock to be reset so that each trial is subjected to the same 70 day analysis. See id. at § 3161(e). Certain time is excluded from the running of the period, including time taken up by consideration of pretrial motions, see id. at § 3161(h)(1)(F), by motions to continue, see id. at § 3161(h)(8)(A), and by the dismissal of an indictment, see id. at § 3161(h)(6). When the excludable days are taken into account, each of Ray's trials commenced well within the 70 day limit. The district court did not

err when it concluded that the Act had not been violated.  See United States v. Van Someren, 118 F.3d 1214, 1216 (8th Cir. 1997).

Ray asserts that the court made prejudicial comments to the jury while explaining why the marijuana evidence (Exhibit 4) would not be sent to the jury room.  After charging the jury, the court said: "[i]t is not our custom to send big quantities of [marijuana] back there.  I don't think it is very pleasant to be around anyway.  I don't think you want to smell it.  But if you need to look at it, it is in evidence and you feel free to look at it."  A court may comment on evidence to assist the jury so long as it makes it clear that the jurors must make all factual determinations themselves.  See United States v. Ruiz-Altschiller, 694 F.2d 1104, 1108 (8th Cir. 1982).  Here, the court had already instructed the jury: "You should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be." Jury Instruction 1.  Ray has not shown that he was prejudiced by the court's brief explanation about why Exhibit 4 was not being sent to the jury room.  The jury had the opportunity to examine the exhibit in the courtroom and to make its own determination about it.

Ray argues that the court should have excluded the tape and transcript of his conversation with Spears on the grounds that the evidence was not properly authenticated under Fed. R. Evid. 901, that it was not relevant under Fed. R. Evid. 402, and that it was prejudicial under Fed. R. Evid. 403.  Ray argues that there were a number of gaps on the tape in which the conversation was unintelligible and that Spears only agreed to make the tape to protect his wife from prosecution.  The gaps to which Ray points are by no means so substantial as to render the entire recording untrustworthy, see United States v. Webster, 84 F.3d 1056, 1064 (8th Cir. 1996), and he has presented no evidence to support his theory that Spears was coerced into making the tape.  The tape was relevant to the charge of witness tampering, and the reference on it to Ray's having failed a urine test was not so prejudicial as to outweigh the tape's probative value.  Ray also argues that the taped conversation was only part of a much

longer conversation and that he was entrapped by Spears into making his statements, but he had the opportunity to argue these points to the jury. The district court did not err in admitting this evidence.

Ray also claims that the district court made a number of sentencing errors. He argues that his sentence should not have been enhanced for using a chartered airplane to transport the marijuana, under U.S.S.G. § 2D1.1(b)(2), because he had no role in arranging the transportation and did not personally transport the drugs. The jury found beyond a reasonable doubt that Ray conspired with and aided and abetted Ellis in transporting the marijuana. There was evidence that Ray knew when he boarded the plane that it was being used to transport marijuana, and he has not shown that the court erred in enhancing his sentence. Ray says that he should have been held responsible only for the possession of 19 kilograms, which would have resulted in his receiving a base offense level of 16, rather than 22. See U.S.S.G. § 2D1.1(c)(12). We need not address that argument, however, because the application of § 2D1.1(b)(2) for using a chartered airplane increases Ray's offense level to 26, regardless of whether his base offense level were 16 or 22.

Ray also claims that the court erred in not granting him a four level downward adjustment for having a minimal role in the conspiracy, under U.S.S.G. § 3B1.2(a). To qualify for the adjustment, the defendant must show he is among the "least culpable of those involved" in the criminal activity. U.S.S.G. § 3B1.2(a) application note 1; United States v. O'Dell, 204 F.3d 829, 837 (8th Cir. 2000). Ray argues that he should be found a minimal participant because there was evidence others in the conspiracy did not trust him. The evidence showed, however, that Ray sold marijuana he had acquired from Ellis on credit on several occasions and that Ellis trusted him to help buy and transport a large shipment of drugs. The court did not clearly err by not finding his role to have been minimal.

Any fact other than a prior conviction "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. Possession with intent to distribute less than 50 kilograms of marijuana has a statutory maximum sentence of 60 months, see 21 U.S.C. § 841(b)(1)(D), but if a defendant is convicted of that offense and found to possess over 50 kilograms, the statutory maximum goes up to 240 months. See id. at § 841(b)(1)(C). Ray's sentences of 97 months on the two drug counts were greater than the statutory maximum of 60 months for an offense involving up to 50 kilograms. The sentences were imposed on the basis of the court's finding that the amount involved was between 60 and 80 kilograms. Under Apprendi Ray could not have been sentenced under the higher statutory maximum unless the issue of quantity had been submitted to the jury.

Ray contends that the appropriate remedy for the Apprendi violation is a new trial. The government concedes that Ray should be resentenced, but argues that there is no reason for a new trial. While the jury did not make a finding of drug quantity that would support a 97 month sentence under § 841(b)(1)(C), the jury found Ray responsible for an offense involving an unspecified amount of marijuana, which is sufficient to support a sentence of up to 60 months under § 841(b)(1)(D). A new trial is therefore not warranted.

For these reasons, Ray's convictions are affirmed and the case remanded for resentencing on the drug counts.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.