# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3389

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Michael P. Hollingsworth, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 17, 2002

Filed: August 2, 2002

_____

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.

_____

BEAM, Circuit Judge.

Appellant Michael P. Hollingsworth appeals consecutive sentences imposed after we remanded his case in United States v. Hollingsworth, 257 F.3d 871 (8th Cir. 2001) [hereinafter "Hollingsworth I"]. We affirm.

Because the facts are set forth in Hollingsworth I, we need not now repeat them at length. Hollingsworth was convicted of three counts of attempting to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841 and 846, and was initially sentenced to thirty-two years' imprisonment for each conviction, with the sentences to run concurrently. Id. at 873. In Hollingsworth I, we determined that

Hollingsworth's sentences exceeded the statutory maximum allowed by 21 U.S.C. § 841(b)(1)(C) for drug offenses involving an unspecified drug quantity, and that his sentence thereby contravened the ruling of Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), and this court's rulings in United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. 2000), and United States v. Sheppard, 219 F.3d 766, 767 (8th Cir. 2000). Hollingsworth I, 257 F.3d at 875-76. Because Hollingsworth had been charged with and convicted of three offenses, we remanded for the district court to apply the United States Sentencing Guidelines' (or "U.S.S.G.") provisions pertaining to consecutive and concurrent sentencing. Id. at 878; accord United States v. Bradford, 246 F.3d 1107, 1114-15 (8th Cir. 2001). On remand, the court sentenced Hollingsworth to 240 months' imprisonment on one count, and to 144 months for each of the other counts, and, pursuant to section 5G1.2 of the Guidelines, ordered the 144-month sentences to run concurrently with one another but consecutive to the 240-month sentence. In effect, the sentences again yielded the same thirty-two-year term of imprisonment Hollingsworth originally faced.

In Apprendi, the Supreme Court held that any fact, other than a prior conviction, that "increases the penalty for a crime beyond the prescribed statutory maximum" must be included in the indictment and proven to the jury beyond a reasonable doubt. 530 U.S. at 490. Hollingsworth argues that the district court's sentencing him to consecutive terms to avert an Apprendi error, yet achieve the same sentence it initially ordered, nonetheless violates Apprendi.

Unfortunately for Hollingsworth, this court, sitting en banc, recently rejected our approach in Bradford and Hollingsworth I, where we remanded to allow the district court to determine whether to impose concurrent or consecutive sentences. United States v. Diaz, Nos. 00-2188, 00-2317, 2002 WL 1477158, at *3 (July 11, 2002). In Diaz, we determined that "Apprendi does not forbid a district court from finding the existence of sentencing factors, including drug quantity, by a preponderance of the evidence," but merely "prevents courts from imposing sentences

-2-

greater than the statutory maximum based on such findings." Id. at *2. We also disavowed an earlier perception that sentencing courts had discretion to depart from section 5G1.2's scheme as to concurrent and consecutive sentences. Compare id. at *3, with Bradford, 246 F.3d at 1114-15 & n.3. Consequently, we concluded that if a defendant has been convicted of multiple counts, "the district court must impose consecutive sentences on the multiple counts until it reaches a sentence equal to the total punishment calculation under the guidelines." Diaz, 2002 WL 1477158, at *2. We found this "permissible[] because imposing consecutive sentences on multiple counts does not violate Apprendi when the sentence for each count does not violate the statutory maximum for that count." Id. Therefore, in this case, because Hollingsworth could have been sentenced to twenty years on each count, for a total of sixty years, and because it was incumbent upon the district court to order consecutive sentences to achieve the court's total punishment calculation, his consecutive sentences yielding a total of thirty-two years amounted to no more than harmless error. Id. at *3 & n.4.

Hollingsworth further argues that the Sentencing Guidelines do not include iodine as a precursor chemical and that he presented evidence that it is only a "reagent." He contends, therefore, that the district court abused its discretion when it based its drug quantity calculation, in part, on Hollingsworth's possession of twenty pounds of iodine.

Hollingsworth confuses application of the Sentencing Guidelines' base offense provisions for determined drug quantities and listed chemicals, with determining drug quantity, the latter being a task antecedent to the former. See id. at *3. Although Hollingsworth contends that "iodine is not listed in the Sentencing Guidelines" as a list I or list II chemical, it need not be. The Guidelines' table of "Listed Chemicals and Quantity" apply to section 2D1.11's "Unlawfully Distributing, Importing, Exporting or Possessing a Listed *Chemical*," but, as Hollingsworth acknowledges, "U.S.S.G. § 2D1.1 is controlling upon the District Court for 21 U.S.C. § 841

convictions." (Emphasis added). The Drug Quantity Table set forth in section 2D1.1(c) determines the base offense level. U.S.S.G. § 2D1.1(a)(3) (1998);[1] accord § 2D1.11(c)(1) ("If the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully, apply § 2D1.1 . . . if the resulting offense level is greater than that determined above.").

Therefore, to ascertain the applicable base level set forth in section 2D1.1(c), the district court must first calculate the drug quantity. The Sentencing Guidelines indicate that, "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, . . . the size or capability of any laboratory involved." U.S.S.G. § 2D1.1 cmt. n.12. "When no controlled substances are seized, the quantity need not be ascertained with exact certainty," but the "approximation must be supported by competent evidence in the record." United States v. Berry, 90 F.3d 148, 152 (6th Cir. 1996). The validity of a sentence based on a district court's approximation of drug quantity depends on the basis of the court's calculation. U.S. v. Ward, 68 F.3d 146, 149 (6th Cir. 1995).

That calculation is a finding of fact reviewed for clear error. Berry, 90 F.3d at 152. As we have said, a district court may determine drug quantity by a preponderance of the evidence, so long as it does not impose sentences greater than the statutory maximum, Diaz, 2002 WL 1477158, at *2, and no sentence in this matter exceeds the maximum sentence available under 21 U.S.C. § 841(b)(1)(C), which contains the statutory maximum available for offenses lacking a specific drug determination. Bradford, 246 F.3d at 1113. Therefore, in circumstances such as those present here, a court may hold a defendant responsible for an amount of drugs

---

[1]"The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a).

if it finds that it is more likely than not that he was actually responsible for that amount. Berry, 90 F.3d at 152.

During Hollingsworth's trial, the government presented expert testimony regarding the production capability emanating from a variety of chemicals and equipment found in Hollingsworth's possession that relate to the charge set forth in Count I of the indictment. The expert concluded that, from the twenty pounds of iodine Hollingsworth possessed, he could produce between 1.3 and 1.8 kilograms of methamphetamine, assuming the presence of phosphorous and pseudoephedrine in sufficient quantities and a sixty to eighty percent yield. Hollingsworth I, 257 F.3d at 874. The Presentence Report used the 1.3 kilogram amount in its recommendations to the court, that amount being more advantageous to Hollingsworth. Id. Hollingsworth's own expert acknowledged that, given the amount of iodine, the government's calculations "would be a conservative type calculation." Hollingsworth's expert was instead concerned that Hollingsworth did not possess amounts of other chemicals necessary to produce 1.3 to 1.8 kilograms of methamphetamine. However, the expert conceded that, assuming all other ingredients were readily available, the government's calculations were conservative.

Given the record, we find there was an adequate basis for the court's calculation of drug quantity. We, consequently, find no clear error.

Hollingsworth's remaining claims are without merit. For the reasons we have stated, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-